CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 06, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DEREK JAMES BIASELLI,** | ) |
| Petitioner, | ) Case No. 7:23cv00278 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| **HAROLD W. CLARKE, Director,** | ) By: Pamela Meade Sargent |
| **Virginia Department of Corrections,** | ) United States Magistrate Judge |
| Respondent. | ) |

Derek James Biaselli, ("Biaselli"), a Virginia inmate proceeding pro se, has filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, ("Petition"), challenging his convictions and sentence in Alleghany County Circuit Court for six counts of grand larceny. (Docket Item No. 1.) The Respondent filed a Motion to Dismiss, (Docket Item No. 14) ("Motion"), to which the Petitioner was advised of an opportunity to respond. (Docket Item No. 18.) Following notice pursuant to 28 U.S.C. § 636(c), all parties filed written consent to the exercise of jurisdiction in this case by a magistrate judge. (Docket Item No. 19.) Thereafter, pursuant to court order, (Docket Item No. 20), the case was assigned to the undersigned magistrate judge to handle the proceedings herein, including dispositive orders, pursuant to 28 U.S.C. § 636(c)(1). After careful review of the pleadings, transcripts and other incidents of the trial record, the court concludes that the Respondent's Motion must be granted, and Biaselli's Petition must be dismissed as procedurally defaulted.

## I. BACKGROUND

A. <u>Procedural Background</u>

A grand jury in Alleghany County indicted Biaselli for six counts of grand larceny from the Walmart store in Covington, Virginia, in violation of Virginia Code § 18.2-95, two counts occurring on December 29, 2018, two counts on January 9, 2019, and two counts on January 15, 2019. Biaselli elected to be tried by a jury. Following trial on November 9, 2020, the jury convicted him on all six counts and set his sentence at five years on each count. After considering a presentence report, voluntary sentencing guidelines,[1] defendant's testimony and arguments of counsel on March 22, 2021, the trial court imposed the sentence recommended by the jury, a total of 30 years, followed by 12 months of post-release supervision. The trial court entered its final Judgment Order on March 26, 2021.

Biaselli timely appealed to the Court of Appeals of Virginia, arguing that (1) the trial court abused its discretion by failing to adequately consider mitigating reasons to reduce the sentence recommended by the jury and (2) the length of his sentence violated the Eighth Amendment's prohibition of cruel and unusual punishment. In a per curiam opinion issued September 7, 2021, the court found that the trial court had considered mitigating circumstances and had not abused its discretion in failing to reduce the jury's sentence. The court further held that Biaselli's Eighth Amendment challenge was procedurally defaulted because not raised in the trial court, and the court declined to apply the ends-of-justice exception. Following Biaselli's request for consideration by a three-judge panel, the court summarily refused his appeal on November 22, 2021. The Supreme Court of

---

[1] The sentencing guidelines recommended a sentence between three years, five months and eight years, seven months, with a midpoint of six years, eleven months.

Virginia refused Biaselli's further petition for appeal by summary order entered May 19, 2022. He did not file a petition in the United States Supreme Court.

On July 12, 2022, Biaselli filed a pro se state habeas petition in Alleghany County Circuit Court, raising the same issues that he is presenting before this court. In a 14-page opinion and order, the Circuit Court denied his petition. Biaselli filed a notice of appeal to the Supreme Court of Virginia but did not file a petition for appeal. By letter dated March 10, 2023, the appellate court returned the electronic habeas record to the circuit court, noting that "no petition for appeal has been filed and the time allowed by law within which to do so has expired." (Docket Item No. 16-8 at 5.)

Biaselli timely filed his § 2254 Petition, postmarked April 21, 2023, in the Eastern District of Virginia, which transferred the case to this District by Order entered May 17, 2023. Biaselli raises the following claims of ineffective assistance of counsel in this Petition, the same claims raised in his state habeas case:

1. Counsel failed to conduct a proper pre-trial investigation into petitioner's case, especially regarding petitioner's mental health and drug addiction issues, in preparation of a defense for trial and to present as mitigating circumstances at sentencing;
2. Counsel failed to seek/request an order from the court and/or funds from the court in order to hire a mental health expert to conduct a mental health evaluation and a neurological or neuropsychological test on petitioner;
3. Counsel failed to have a qualified mental health expert present at sentencing to adequately explain the effect of petitioner's mental health and drug addiction issues to the sentencing court; and
4. Counsel failed to object to the jury viewing the still photos of petitioner at Walmart in Lexington as evidence without an explanation to the jury that he was not accused of stealing anything from the Lexington Walmart.

3

B. <u>Factual Background</u>

Ashby Curry, an Asset Protection Associate at Walmart, testified that her primary responsibility was to detect and deter shoplifting. She routinely reviewed the video surveillance footage from the store. While doing so, she observed suspicious activity at the Covington Walmart on December 29, 2018; January 9, 2019; and January 15, 2019. She identified and authenticated the six video clips she made from the surveillance video, which were played for the jury while she explained what she was observing in each video. On the first video from December 29, 2018, she pointed to an individual picking up an HP desktop computer in the electronics department and placing it in his shopping cart. He then went to the hardware department and removed the security device from the computer box, leaving the security device on the shelf in the hardware aisle. He then left from the hardware aisle and exited the store through the general merchandise exit without paying for the item in his cart. He placed the computer in his vehicle, a white van in which Curry had seen the person entering and later leaving the Walmart parking lot on the parking lot surveillance videos. She identified the person in the video as Biaselli, and several still photographs from the video surveillance were introduced into evidence for a clearer view of the thief. Trial Tr.[2] at 96-112.

After placing the computer in his vehicle, Biaselli returned to the store two minutes after he left. Curry again narrated his route through the store. This time, he placed a vacuum cleaner and another desktop computer into his cart. He went through the clothing department, and as he exited the store, again without paying, a cardigan sweater was draped across the other merchandise. Trial Tr. at 113-22.

On January 9, 2019, the same individual returned to the store, wearing the same hoodie and hat that he had worn on December 29. He placed two desktop

---

[2] Citations to the trial transcript for November 9, 2020, will be referred to as "Trial Tr."

computers in the shopping cart and left the store without paying. The video showed that the security lights started flashing when he exited the store, but he did not stop or react to the alarm. He put the computers in his van. Again, he returned to the store two minutes later. This time, he put a Roku Express streaming device stick in his cart and two more desktop computers. He removed the security devices from the merchandise while still in the electronics department. He then proceeded through the clothing department and exited the store without paying. Trial Tr. at 125-39.

On January 15, the same person (wearing the same hat) returned to the store accompanied by another male. Both persons had a cart, and routers from the electronics aisle were being placed in both carts. They went to the clothing department where all merchandise was transferred to the cart of the person later identified as Biaselli. Biaselli left the store alone, with two Link routers, two Netgear routers, two X-Box game systems and a jacket and a cardigan that were placed on top of the merchandise. He did not pay or stop at any cashier's register. The security alarm alerted as he exited, but he kept moving as if nothing had happened. He returned to the store seven minutes later. His unidentified accomplice, still in the store, had a vacuum cleaner in his cart and then placed a pressure washer in the cart. The man identified as Biaselli took a black tote to the electronics department, placed some items in the tote, and he secured the lid on it. He joined his accomplice in the hardware department, where they swapped carts. Biaselli eventually exited the store alone, with the vacuum cleaner and pressure washer, without paying for them. The accomplice did not take anything out of the store. Trial Tr. at 143-59.

Curry verified what she saw on the videos by manually counting items in the store and comparing the count with the computerized inventory list, confirming that the identified items were missing from the count. She identified the total value of items taken from the Walmart as $7,119.96. Broken down by each time he exited the store without paying for merchandise, the subtotals were $899 and $1,407.96 for

the two thefts on December 29, $1,498 and $1,237 on January 9, and $1,492 and $586 on January 15.  Trial Tr. at 106-08, 122-23, 131-32, 138-39, 149-51, 159-61.

Detective Richard Baker of the Covington Police Department regularly met with Curry to discuss ongoing and new cases at the Walmart.  Curry advised him of the incidents on December 29, January 9 and January 15.  She provided him with still photos from the surveillance video.  He identified one still photo of Biaselli that he received from Curry.[3]  He also posted pictures on the Department's social media page, requesting assistance in identifying the individual.  He received a tip within one hour from someone who previously worked with Biaselli.  He entered Biaselli's name into the VCIN and other law enforcement information exchanges and obtained other identifying information on Biaselli.  With that information, he obtained Biaselli's photo from the DMV site.  That photo was of the same person as shown in the Walmart still shots.  From the law enforcement information exchange, Baker also identified two pawn shops that had received items resembling those stolen from the Covington Walmart.  Trial Tr. at 75-91.

Catherine Ortiz, an employee at Pawn Plus in Christiansburg, Virginia, identified the pawn ticket for two brand new Netgear routers that she bought from Biaselli for $25 each on January 23, 2019, while she was working at the pawn shop.  She identified the seller as the defendant, Biaselli, and she had a copy of his driver's license with her file records.  Trial Tr. at 176-87.

Giovanni Castro, owner of a pawn shop in Waynesboro, Virginia, testified that he was working at his shop on January 31, 2019, when he purchased an HP desktop computer and a Lenovo desktop computer from Biaselli for a total of $280.  He also had a copy of Biaselli's identification in his file.  Trial Tr. at 188-97.

---

[3] That photo clearly showed Biaselli outside the Lexington, Virginia, Walmart, not Covington, but that fact was not mentioned during testimony, and no explanation was ever given for why they had a still shot from the Lexington Walmart.

The defense introduced no evidence at trial. Before and during deliberations, a juror asked questions about the Lexington Walmart photo and why it was in evidence. The last question was, "[W]hy does the best photo show a date of January 11, 2019, at the Lexington Walmart?" Trial Tr. at 238. The court responded that, "you are to consider the evidence presented to you. You have copies of the exhibits that were introduced and you must use your best memory and recollection of each exhibit, the purpose for which each exhibit was entered. …" Trial Tr. at 238. The jury returned its verdict of guilty on all six counts.

The only evidence presented at the sentencing phase of the jury trial was a certified copy of each prior conviction on Biaselli's record: Possession of cocaine, two counts of robbery with a firearm, possession with intent to distribute cocaine, two counts of third-degree grand theft, two more counts of third degree grand theft plus failure to appear, petty larceny, two counts of grand larceny and one count of obtaining money by false pretenses and four counts of felony shoplifting. Trial Tr. at 244. The jury recommended five years for each charge.

## II. Discussion

A. Limitations on Habeas Review

A federal district court reviewing a § 2254 petition is limited by the separate but related doctrines of exhaustion, procedural default and independent and adequate state law grounds. Further, when reviewing constitutional claims adjudicated on the merits in state court, a federal court may grant relief on such claims only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

This standard of review and the previously mentioned procedural doctrines promote the principles of finality, comity and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *See Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

A habeas petitioner is required to exhaust his claims in state court before his claims can be considered in federal court. *See* 28 U.S.C. § 2254(b)(1)(A). To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court, on the merits, before he is entitled to seek federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Failure to do so "deprive[s] the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.

A separate but closely related issue is the doctrine of procedural default. If a state court has clearly and explicitly denied a petitioner's claim based on a state procedural rule that provides an independent and adequate ground for the state court's decision, that claim is procedurally defaulted for purposes of federal habeas review as well. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A state procedural rule is independent if it does not depend on a federal constitutional ruling, and it is adequate if it is firmly established and regularly applied by the state court. *See Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1999). A claim that has not been presented to the highest state court — and would be procedurally barred as untimely or successive if the petitioner tried to present the issue to the state court now — is considered simultaneously exhausted and defaulted. *See Bassette v. Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990).

Before a federal habeas court will consider a procedurally defaulted claim, the prisoner must show both cause for the default and actual prejudice resulting from

the claimed federal violation. *See Coleman*, 501 U.S. at 750. Cause for the procedural default requires the existence of some objective factor, external to the defense and not fairly attributable to the prisoner. *See Coleman*, 501 U.S. at 756–57. To show prejudice to overcome procedural default, a petitioner must show that the claimed violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

B. Analysis

None of Biaselli's ineffective assistance of counsel claims were properly presented to the Supreme Court of Virginia because no petition for appeal was filed from the Circuit Court order denying his state habeas petition. Under Virginia Supreme Court Rule 5:17, a petition for appeal from a trial court, in this case the Circuit Court of Alleghany County, "must be filed … not more than 90 days after the entry of the order appealed from." VA. S. CT. R. 5:17(a)(1). Although Biaselli timely noted an appeal from the October 26, 2022, Order, he did not file a petition for appeal by January 24, 2023. For that reason, the Supreme Court of Virginia, the state's highest court, procedurally dismissed the appeal as reflected in its letter of March 10, 2023. (Docket Item No. 16-8 at 5.) Rule 5:17(a)(1) has long been recognized as an independent and adequate state ground for procedural dismissal of a claim. *See O'Dell v. Netherland*, 95 F.3d 1214, 1244 (4th Cir. 1996). Therefore, Biaselli's habeas claims are procedurally defaulted, and this court may consider those claims only upon a showing of "cause and prejudice." *Coleman*, 501 U.S. at 750.

Biaselli has not argued that he has cause for his default. Rather, he asks the court to invoke the "ends of justice" exception under Virginia Supreme Court Rule 5:25. The Rules of the Supreme Court of Virginia apply only to Virginia state courts.

9

The proper standard in this federal court is the one set forth in *Coleman*, namely that some objective factor, external to the defense and not attributable to the prisoner, caused the procedural default. *See Coleman*, 501 U.S. at 756–57. Neither Biaselli's lack of knowledge of the law nor his failure to file a timely petition for appeal are external to the defense. Thus, he has not shown cause for his procedural default. Neither has he shown that his trial was infected by errors of constitutional dimension, as required to show prejudice.

The Supreme Court has recognized one narrow exception to the general cause and prejudice rule set forth in *Coleman*. When a petitioner seeks federal relief for a defaulted "substantial claim" of ineffective assistance of trial counsel, and such claims can be raised for the first time only in post-conviction proceedings under state law, if a state habeas petitioner had no attorney, or if habeas counsel was ineffective as defined in *Strickland v. Washington*, 466 U.S. 668 (1984), those circumstances allow a federal court to review the merits of an otherwise procedurally defaulted claim. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012). The rationale underlying *Martinez* is to ensure that meritorious claims of ineffective assistance of trial counsel are considered by at least one state or federal court. *See Davila v. Davis*, 582 U.S. 521, 532 (2017). However, the Court in *Martinez* limited its holding to cases in which the procedural default occurred during the initial post-conviction hearing; the holding does not apply to "errors in other kinds of proceedings, including appeals from initial-review collateral proceedings." *Martinez*, 566 U.S. at 16.

Biaselli did not default his claims at the initial-review habeas proceeding. His default came in failing to perfect his appeal from the initial-review proceeding. The state trial court considered the merits of Biaselli's ineffective assistance of counsel claims. This is not a situation where procedural default prevents the claims from being considered by any court, state or federal. Therefore, *Martinez* does not save Biaselli's defaulted claims.

10

## III. Conclusion

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. FED. R. GOV. § 2254 CASES 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. *See Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012). Biaselli has not made such showings in this case.

For the reasons stated, the court will grant the Respondent's Motion to Dismiss, (Docket Item No.14), dismiss the Petition for a Writ of Habeas Corpus, (Docket Item No. 1), and deny a certificate of appealability.

**ENTER:** September 6, 2024.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE